WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Gladys Marie H., | No. CV-24-02933-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Heather Gladys Marie H. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying her disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

I.    **BACKGROUND**

A.    **Factual Overview**

Claimant was 50 years old on her alleged disability onset date of May 25, 2021. (Administrative Record ("AR") 15.) She has at least a high school education and her past relevant work is skilled. (AR 27, 28.) Claimant filed an application for disability insurance benefits on August 13, 2021, under Title II. (AR 15.) The claim was initially denied on March 3, 2022, and again upon reconsideration on December 19, 2022. (*Id.*) After a hearing held on October 19, 2023, the ALJ denied Claimant's claim on December 8, 2023.

---

[1]    As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

(AR 29.)  The Appeals Council denied Claimant's request for review on September 4, 2024.  (AR 1.)  Claimant then appealed to this Court.  (Doc. 1.)

### B.        The SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E).  To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment."  *Id*. § 423(d)(1).  The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy.  *Id*. § 423(d)(2)(A).  The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a)(1).  The steps are followed in order, and each step is potentially dispositive.  *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity."  *Id*. § 404.1520(a)(4)(i).  "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit."  20 C.F.R. § 416.972(a)–(b).  If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments."  *Id.* § 404.1520(a)(4)(ii).  To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id.* § 404.1520(a)(4)(iii).  If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to

Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C.    The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of May 25, 2021. (AR 17.)

At Step Two, the ALJ determined that Claimant had severe impairments, including remote history of cirrhosis of the liver with ascites (without known symptoms), idiopathic epilepsy, Guillain Barré Syndrome, migraines and small vessel ischemic disease, mild neurocognitive disorder, depression, and obesity. (*Id.*)

At Step Three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404. (AR 18.) With respect to the mental impairment, the ALJ analyzed the four "paragraph B" criteria and found that

Claimant had mild limitations in: (1) understanding, remembering or applying information; and (2) interacting with others; and moderate limitations in: (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself.  The ALJ also found that the medical evidence of record did not establish both ongoing medical treatment, mental health therapy, psychosocial supports, or highly structured settings that diminished the impairment symptoms and signs, thus the record failed to establish the presence of "paragraph c" criteria.  (AR 19–21.)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b)  except she should never climb ropes, ladders or scaffolds; could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could frequently reach overhead, feel, finger, and handle bilaterally; should avoid concentrated exposure to loud noise and all exposure to unprotected heights and moving and dangerous machinery; and was able to understand, remember and carry out simple instructions and tasks.

(AR 21.)

At Step Four, the ALJ found that Claimant was not capable of performing any past relevant work.  (AR 27.)  At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that claimant can perform considering her age, education, work experience, and RFC, such as "Marker," "Housekeeper/Cleaner," and "Sales Attendant."  (AR 28.)  Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date through December 8, 2023.  (AR 29.)

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).  Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).  The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").  Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely."  *Garrison*, 759 F.3d at 1010.  Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    DISCUSSION

Claimant frames her arguments on appeal as follows: (1) the RFC does not adequately reflect Claimant's limitations based upon the medical opinion evidence of record; (2) the RFC does not account for Claimant's testimony regarding her disabling symptoms; and (3) the ALJ failed to present a complete hypothetical question to the VE. (Doc. 13 at 2.)  In reality, Claimant challenges the ALJ's decisions to discount the opinions of two medical professionals and discount her symptoms testimony.  These challenges will be addressed in turn.[2]

---

[2]    Claimant's assertion that the ALJ failed to give a complete hypothetical question to the VE is based entirely on her other arguments, and thus need not be separately analyzed. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175–76 (9th Cir. 2008) (declining to substantively address the claimant's argument that "the ALJ's hypothetical was incomplete" because the claimant "simply restate[d] her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her

### A.    Medical Testimony

An ALJ must evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (alterations in original) (quotation marks omitted). An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (citation modified). Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787.

In this case, the ALJ evaluated evidence from six different doctors and, as relevant here, found Dr. Keith Cunningham, M.D.'s opinion "only partially persuasive" and Dr. Maryanne Belton, Psy.D.'s opinion "unpersuasive." (AR 27.) Claimant challenges the ALJ's findings concerning Dr. Cunningham and Dr. Belton.

### 1.    Dr. Cunningham's Opinion

Dr. Cunningham met with Claimant on February 10, 2022, for purposes of performing a "physical consultative examination." (AR 27; *see also* AR 1428–35.) As relevant here, Dr. Cunningham assessed Claimant as having "Guillain-Barre syndrome with residual sensory and gait deficits." (AR 1430.) He also opined Claimant could never engage in "Kneeling" or "crawling," and could only occasionally engage in "Reaching," "Handling," "Fingering," and "Feeling," but left blank the portion of the form that asked, "On which of your findings have you based these conclusions?" (AR 1433.)

The ALJ found that Dr. Cunningham's opinion was "partially persuasive." (AR 27.) Regarding the supportability factor, the ALJ found that the opinion was "generally

testimony and the testimony of medical experts").

supported by a physical examination during the consultative examination." (*Id.*) With respect to the consistency factor, however, the ALJ found that Dr. Cunningham's opinions regarding "gait issues were not supported by the medical evidence of record as a whole" and "there was no basis in the record to prohibit crawling or kneeling, and the manipulative limitations were too restrictive." (AR 27). The ALJ further noted that another doctor—whose opinion the ALJ found "persuasive," (AR 26)—"also found that the limitations of Dr. Cunningham were overly restrictive." (AR 27 (citing AR 59 (stating that "MSS is overly restrictive for PE findings, specifically the Postural & manipulative limitations."))).)

Claimant argues that the ALJ erred in discounting Dr. Cunningham's opinion by "substitut[ing] his opinion for that of a medical provider" and by disregarding Dr. Cunningham's "examination findings." (Doc. 13 at 13.) She further argues that Dr. Cunningham's "examination contains supportive findings that justify the limitations that the ALJ declined to accept," and Dr. Cunninghman's "clinical findings in the opinion support his conclusions." (*Id.* at 14.) Claimant's arguments focus exclusively on the supportability factor.

But the ALJ partially discounted Dr. Cunningham's opinion based on its lack of *consistency* with the medical record—not based on the lack of *supportability*. (AR 27.) Because Claimant does not argue that the ALJ erred in finding that Dr. Cunningham's opinion was not consistent with the medical record as a whole, such an argument cannot be manufactured for her on appeal. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." (internal quotation marks omitted)); *see also Lewis*, 236 F.3d at 517 n.13 (declining to address argument that "was not raised by [the claimant] on appeal"); *see also Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3 1155, 1161 n.2 (9th Cir. 2008) (declining to address a finding by an ALJ because the claimant "failed to argue this issue with any specificity in his briefing"); *cf. Bray v. Astrue*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) ("This argument, however, was not made

in [appellant's] opening brief; thus, we deem it waived."). Because Claimant did not challenge the ALJ's consistency finding, her argument concerning Dr. Cunningham's opinion fails.

### 2.    Dr. Belton's Opinion

Dr. Belton evaluated Claimant on January 28, 2022, performing a "psychological consultative examination." (AR 27.) Dr. Belton "deferred an opinion that any limitations existed but wrote that memory and recall skills were impaired, sustaining attention to novel tasks would be difficult, she would require step-by-step instructions, and she would be challenged by unpredictable work environments, and needed assistance in managing money." (*Id.* (citing AR 1419–27).) In her report, Dr. Belton noted that "[t]here was evidence for discrepancy across indices," (AR 1422), and indicated that her opinions on Claimant's limitations would be "DEFERRED" because she "struggled to determine whether [Claimant] might experience a return to cognitive capabilities after completion of current interventions and treatment services," (AR 1425), but then set forth limitations anyway, (AR 1425–26).

The ALJ found Dr. Belton's opinion "unpersuasive," finding it to be both unsupported and inconsistent with the record. (AR 27.) Specifically, the ALJ noted that the opinion was "poorly supported as it was based upon test results that Dr. Belton found unreliable," stated that it was inconsistent because although it stated "no limitations could be provided, it went on to opine that the claimant was unable to manage benefits," and determined it was "inconsistent with the claimant's activities of daily living." (*Id.*) Claimant argues that the ALJ erred with respect to both the supportability and consistency findings. (Doc. 13 at 14–16.)

### a.    Supportability

Claimant argues that the ALJ erred in its supportability finding because Dr. Belton did not rely solely on test results she found unreliable, and instead "indicated that her diagnostic impression was based on the clinical interview, review records [sic], and observations, not simply on test data." (Doc. 13 at 14–15.) In support of this assertion,

Claimant cites AR 1425. (*Id.*).

Claimant's argument fails because the record does not support her factual assertion that Dr. Belton considered anything other than the unreliable test results in formulating the limitations. Rather than support Claimant's position, AR 1425 establishes that Dr. Belton relied solely on the test results, referring only to Claimant's "scores" as justification for the limitations identified on that page. (AR 1425.) Likewise, the limitations on the following page reflect that Dr. Belton relied on "test scores" and her "testing profile." (AR 1426.)

### b.    Consistency

Claimant first argues that the ALJ erred in its consistency analysis because the ALJ failed to evaluate the opinion of another doctor who—like Dr. Belton—found that Claimant could understand and remember one to two step instructions. (Doc. 13 at 15.) Specifically, Claimant argues that it was error for the ALJ to not consider the consistency of Dr. Belton's opinion with "the opinion of the State agency physician, Dr. Zeuss . . . [who] concluded that [Claimant] could understand and remember one to two step instructions, a limitation that the ALJ did not adopt." (*Id.*) In support of her argument, Claimant cites a case in which the Eastern District of Washington concluded that it was error for an ALJ to fail to evaluate an opinion's consistency with two other medical opinions that the ALJ also rejected as inconsistent with the overall medical record. *See Kevin H. v. Kijakazi*, 2021 WL 4221612, at *5 (E.D. Wash. 2021) ("Under the new regulations, it was incumbent upon the ALJ to consider consistency, or lack thereof, between the medical opinions when considering the persuasiveness of Dr. Metoyer, Dr. Kester, and Dr. Gilbert's opinions.").

Although neither party identifies binding precedent from the Ninth Circuit on this issue, *Kevin H.* is persuasive. The Ninth Circuit has made clear that in evaluating the consistency factor, an ALJ must evaluate whether the "medical opinion is 'consistent . . . with *the evidence from other medical sources* and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)) (emphasis added). *Kevin H.* is consistent with this requirement that an ALJ consider consistency with respect to the record as a whole—including medical and non-medical evidence. Here the

ALJ found Dr. Belton's opinion inconsistent with the non-medical evidence concerning Claimant's activities of daily living, but did not address Dr. Zeuss's opinion—or any "evidence from other medical sources"—in the consistency analysis. (AR 27.) This failure runs afoul of the principle set forth in *Kevin H.*, and more importantly, the requirements set forth in *Woods* and 20 C.F.R. § 404.1520c(c)(2).

The Commissioner does not substantively engage with the holding in *Kevin H.* or argue that I should not follow it, noting only that it was decided in a different district. (Doc. 17 at 8–9.)  Rather, the Commissioner argues that *Kevin H.* is distinguishable because "[t]here is no evidence the ALJ failed to consider the consistency of Dr. Belton's opinion with Dr. Zuess's prior administrative finding" and that "courts should presume that public officers have properly discharged their official duties." (*Id.* at 9.)  In other words, because the ALJ generically noted that he "fully considered" all medical opinions in his decision, (AR 26), the Commissioner argues I should assume the ALJ properly considered Dr. Zeuss's (and all other) medical opinions in evaluating the consistency of Dr. Belton's opinion. (Doc. 17 at 9.)  But the Ninth Circuit has made clear that courts "cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).  Because the ALJ provided no explanation for why Dr. Belton's opinion was or was not "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim," it is apparent that his analysis runs afoul of applicable law.[3]

**B.    Evaluation of Claimant's Disabling Symptoms**

If the ALJ finds that a claimant "presented objective medical evidence of an

---

[3]    Claimant argues that the ALJ also erred in finding Dr. Belton's opinion inconsistent with her activities of daily living because there are "critical differences between activities of daily living and activities in a fully time job." (Doc. 13 at 15 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).)  Because the ALJ failed to engage in the required consistency analysis—which requires analyzing both the medical and nonmedical evidence—it is unnecessary to address Claimant's second argument.

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject [her] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655 (citation omitted). "This is not an easy requirement to meet:  The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted).  "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).  An ALJ, however, is "not required to believe every allegation of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted).  "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id*.

In this case, the ALJ rejected Claimant's symptom testimony concerning her lack of feeling in her feet and her lack of sensation in her hands, and in doing so identified specific medical evidence suggesting that she had "[n]ormal or intact sensation." (AR 21–22 (citing AR 1125, 1129, 2036, 2051).)  Claimant does not argue that the ALJ failed to provide specific, clear, and convincing reasons when it cited the objective medical evidence.  Rather, she argues that the ALJ "appears to unduly rely on the objective evidence," and claims that this was improper because the ALJ was "not qualified to interpret" that evidence.  (Doc. 13 at 17–18.)  The cases she cites in support of this proposition are irrelevant, and there was nothing wrong with the ALJ relying on the medical records to discount Claimant's symptom testimony. *See, e.g.*, *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.").

In rejecting certain symptom testimony, the ALJ also cited Claimant's ability to

climb in and out of a pool, handle and finger objects, care for herself, prepare meals, clean, do laundry, shop, pay bills, manage finances, read, do word games, watch television, use a computer, and watched movies, to discount her testimony concerning her sensation and her concentration. (AR 20, 24, 26–27.)   Again, Claimant does not argue that this doesn't constitute specific, clear, and convincing reasons, and instead argues that the ALJ was not permitted to discount her symptom testimony based on evidence of daily living activities. (Doc. 13 at 18–19.)   The cases Claimant cites in support of this argument are irrelevant and, indeed, her argument contradicts her statement—only one page earlier—that "[i]n assessing a plaintiff's testimony, the ALJ may consider a number of factors, including . . . daily activities."   (AR 17 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)).)   Her argument thus fails.

###   C.    Remand for Harmful Error

Having found that the ALJ erred in evaluating Dr. Belton's opinion, the remedy must be identified.  Not every error requires vacating an ALJ's decision.  If an "error was harmless, meaning it was inconsequential to the ultimate nondisability determination," a court may affirm.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quotation marks omitted); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a harmless error.").

The Commissioner does not argue that the insufficient analysis of Dr. Belton's opinion was harmless, (*see generally* Doc. 17), and it is apparent that this error is not harmless.  If the proper consistency analysis had resulted in the limitations set forth in Dr. Belton's opinion being incorporated into the RFC—including that Claimant could only follow one to two step instructions—Claimant may have been found disabled.  Because the ALJ committed harmful error in discounting Dr. Belton's opinion based on the consistency factor, the ALJ's decision denying Claimant benefits will be vacated.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 31st day of March, 2026.

Honorable Sharad H. Desai
United States District Judge